IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: _____

GARY SALZMAN,

    Plaintiff,

v.

LARRY J. BUTLER, M.D. and UCH-MHS d/b/a
UNIVERSITY OF COLORADO HEALTH
MEMORIAL HOSPITAL CENTRAL

    Defendants,

**PLAINTIFF'S COMPLAINT, JURY DEMAND, AND CERTIFICATE OF REVIEW**

Plaintiff, Gary Salzman, through his attorneys, Bogue, Paoli & Thomas, L.L.C. and Boesen Law, LLC, submits the following Complaint, Jury Demand, and Certificate of Review:

## I. CERTIFICATE OF REVIEW

1. Pursuant to C.R.S. § 13-20-602(3)(a), counsel certifies as follows:

    a. Counsel has consulted with physicians and health care providers with expertise in the areas of the alleged conduct as set forth in Plaintiff's Complaint;

    b. The physicians and health care providers who have been consulted have reviewed all known facts relevant to the allegations of conduct as complained of in Plaintiff's Complaint;

1

  c. Based upon such facts, these physicians and health care providers have concluded that the filing of the claims against Defendants does not lack substantial justification within the meaning of C.R.S. § 13-17-102(4); and,

  d. The physicians and health care providers who have reviewed all known facts relevant to the allegations of conduct as contained in Plaintiff's Complaint for Damages meet the requirements set forth in C.R.S. § 13-64-401.

## II. **PARTIES**

2. Plaintiff is a resident of Great Falls, Montana.

3. Upon information and belief, at all relevant times, Defendant, Larry J. Butler, M.D. (hereinafter referred to as "Defendant Butler"), was a physician licensed to practice medicine in the State of Colorado specializing in general surgery, with a primary place of business located in Colorado Springs, Colorado. Currently, Dr. Butler is practicing medicine in Colorado Springs, Colorado.

4. At all relevant times, Defendant, UCH-MHS d/b/a University of Colorado Health Memorial Hospital Central f/k/a Memorial Health System (hereinafter referred to as "Memorial Hospital Central") was a nonprofit corporation in good standing located in Colorado Springs, El Paso County, Colorado. Upon information and belief, Memorial Hospital employed the nurses, technicians, therapists, hospitalists and other personnel who provided care and treatment to Gary Salzman during all relevant times. Also, at all relevant times, these personnel were acting within the course and scope of their employment or agency.

5. Plaintiff fully complied with the provision of C.R.S. § 24-10-109 and, specifically, gave notice pursuant to C.R.S. § 24-10-109 first on March 15, 2013.

### III. JURISDICTION AND VENUE

6. Plaintiff incorporates Paragraphs 1 through 5 herein by reference.

7. This Honorable Court has jurisdiction as this is a diversity action filed under the provision of 28 U.S.C. § 1332 (a)(1) by reason of the diversity of the citizenship of the parties. The Plaintiff is a citizen of Montana, and the Defendants are citizens of Colorado or corporations incorporated under the law of the State of Colorado, with their principal places of business in Colorado Springs, Colorado.

8. The value of the case exceeds the jurisdictional threshold value of $75,000.00, exclusive of interest and costs.

### IV. GENERAL ALLEGATIONS

9. Plaintiff incorporates Paragraphs 1 through 8 herein by reference.

10. On October 6, 2012, Mr. Salzman presented to the Memorial Hospital Central emergency department.

11. Upon presentation, Mr. Salzman complained of one (1) day old severe abdominal pain radiating into his left anterior chest, active vomiting, loose stool, fever, chills, and difficulty breathing.

12. On October 6, 2012, a CT scan of Mr. Salzman's abdomen and pelvis was performed at Memorial Hospital Central.

13. The October 6, 2012, CT scan described in Paragraph 11 revealed that Mr. Salzman had a cholelithiasis without biliary dilation, mildly dilated segment of small bowel in the left upper quadrant and stable hypervascular hepatic lesion suggesting cavernous hemangioma formation.

14. On October 6, 2012, Mr. Salzman was admitted to the ICU at Memorial Hospital Central for symptomatic receiver supportive care and evaluation and treatment of acute pancreatitis.

15. On October 7, 2012, Defendant Butler performed a surgical consult on Mr. Salzman at Memorial Hospital Central.

16. In his consultation note of October 7, 2012, Defendant Butler documented that his impression of Mr. Salzman's condition was cholelithiasis with gallstone pancreatitis, probable associated acute cholecystitis, obesity, and a history of Zollinger-Ellison syndrome requiring pancreatectomy, total gastrectomy, splenectomy, and partial liver resection.

17. In his consultation note of October 7, 2012, Defendant Butler recommended a cholecystectomy.

18. On October 9, 2012, at approximately 11:59 p.m., Defendant Butler performed a laparoscopic cholecystectomy with an intraoperative cholangiogram at Memorial Hospital Central.

19. The October 9, 2012, laparoscopic cholecystectomy with intraoperative cholangiogram procedure ended at 12:58 p.m.

20. Defendant Butler documented that his post-operative diagnoses for Mr. Salzman were: (1) acute cholelithiasis; (2) gallstone pancreatitis; and (3) status post total gastrectomy and distal pancreatectomy for Zollinger-Ellison syndrome.

21. Defendant Butler documented that an intraoperative fluoroscopic cholangiography showed good filling of Mr. Salzman's biliary system with flow into the duodenum and no evidence of filling defects.

22. On October 9, 012, Paul Connaughton, M.D., a board certified radiologist, interpreted the intraoperative diagnostic radiology study performed during the cholecystectomy on October 9, 2012.

23. Dr. Connaughton documented that there were filling defects, cystic remnant consistent with stones or air bubbles, no contrast extended into the duodenum, and contrast extravasated into the right sub-hepatic space.

24. Defendant Butler did not correct the filling defects during the procedure and as noted by Dr. Connaughton.

25. On October 10, 2012, Mr. Salzman exhibited a high white blood cell count at 30.9 (reference range of 4.0 – 11.0), low hemoglobin at 11.0 (reference range of 14.0 – 18.0), low hematocrit at 28.9 (reference range of 40.7 – 50.3), low red blood cell count at 4.29 (reference range of 4.7 – 6.1), low mean corpuscular hemoglobin at 25.6 (reference range of 26 – 34), high platelet count at 510 (reference range of 150 – 375), high neutrophil percentage at 92.2% (reference range of 40 – 60), low lymphocyte percentage at 4.2% (reference range of 22 – 44), high neutrophil absolute at 28.5 (reference range of 1.7 – 5.3), high monocyte absolute at 1.1

5

(reference range of 0.1 – 0.5), moderate increase in platelet count, and abnormal RBC morphology.

26. On October 10, 2012, Mr. Salzman also exhibited a fever, elevated systolic blood pressure, an elevated respiratory rate, epigastric pain, and his oxygen saturation dipped as low as 85%.

27. On October 10, 2012, Mr. Salzman was placed on nasal cannula oxygen therapy and administered pain medication.

28. At 0:00 on October 11, 2012, Ami Smith, PtCrT, performed an assessment of Mr. Salzman's vital signs.

29. Ms. Smith documented that, at 00:00 on October 11, 2012, Mr. Salzman was hypertensive and continued to receive oxygen therapy.

30. At 03:24 on October 11, 2012, Sheri Neu, R.N. performed an assessment of Mr. Salzman.

31. Nurse Neu documented that, at 3:24 on October 11, 2012, Mr. Salzman's epigastric pain was a 6/10, aching and dull, and he remained on cannula oxygen therapy.

32. At 04:21 on October 11, 2012, Mr. Salzman exhibited a high white blood cell count at 23.5, decreased hemoglobin at 9.7, low hematocrit at 30.9, low red blood cell count at 3.83, decreasing mean corpuscular hemoglobin at 25.3, high platelet count at 416, high neutrophil percentage at 90, low lymphocyte percentage at 5.5, high neutrophil absolute at 21.2, high mono absolute at 1.1, slight increase platelet estimate, and abnormal red blood cell morphology.

33. At 08:00 on October 11, 2012, Nae Lee assessed Mr. Salzman.

34. Nae Lee documented that, at 08:00 on October 11, 2012, Mr. Salzman was hypertensive, exhibiting a slight fever, experiencing 6/10 epigastric pain, and his oxygen saturation levels had lowered to 90%, and Mr. Salzman was coughing.

35. At 09:18 on October 11, 2012, Lana J. Horne, R.N., performed an assessment of Mr. Salzman.

36. Nurse Horne documented that, at 09:18 on October 11, 2012, Mr. Salzman was experiencing 6/10 epigastric pain with an acceptable pain intensity of 3/10, nausea, coughing, shallow respiration, and his urine was yellow and amber.

37. Nurse Horne documented that, at 09:26 on October 11, 2012, the recommendations for the next 12-14 hours of care for Mr. Salzman included pain control, nausea control, IS, monitor labs and vitals, monitor and treat blood sugar and possible discharge.

38. Around 11:00 on October 11, 2012, Nae Lee assessed Mr. Salzman, and documented that Mr. Salzman was hypertensive with his systolic blood pressure at 186 and his diastolic pressure at 91, exhibiting a fever and his oxygen saturation was 88%.

39. Around 14:16 on October 11, 2012, Gary Salzman was discharged from Memorial Hospital on order of Dr. Butler.

40. Upon discharge on October 11, 2012, it was documented that Mr. Salzman had an elevated white blood cell count and he was experiencing epigastric pain.

41. Upon discharge on October 11, 2012, Mr. Salzman was instructed to take the following medications: Colace, Norco, Aspirin, and insulin glargine.

42. Upon discharge on October 11, 2012, Mr. Salzman was directed to follow-up for blood work on October 16, 2012.

43. On October 14, 2012, Mr. Salzman experienced confusion and hallucinations.

44. On October 14, 2012, Mr. Salzman was admitted via the emergency department to Parkview Medical Center in Pueblo, Colorado.

45. Upon admission to Parkview Medical Center on October 14, 2012, Mr. Salzman was found to have fluid collection surrounding his liver with a likely bile leak.

46. Upon admission to Parkview Medical Center on October 14, 2012, Mr. Salzman was noted to be hypoxic, hypotensive, and with an oxygen saturation of 72%.

47. Upon admission to Parkview Medical Center on October 14, 2012, Mr. Salzman was intubated and started on pressors.

48. On October 14, 2012, James A. Conrad, M.D., a general surgeon, consulted on the care and treatment of Mr. Salzman.

49. On October 14, 2012, Dr. Conrad found Mr. Salzman had fluid collection surrounding his liver and a likely bile leak.

50. On October 14, 2012, Dr. Conrad documented that Mr. Salzman was admitted to Parkview Medical Center with sepsis and the source of the sepsis appeared to be the bile leak.

51. On October 14, 2012, Dr. Conrad noted that Mr. Salzman demonstrated evidence of acute renal injury.

52. On October 14, 2012, Dr. Conrad recommended CT-guided drainage, ongoing resuscitation, antibiotics, deep vein thrombosis prophylaxis, and a possible laparotomy if adequate drainage could not be obtained.

53. On October 15, 2012, CT-guided drainage of the fluid in the abscess located in the October 9, 2012 surgical site was performed.

54. The drained fluid from the abscess located in the October 9, 2012, surgical site tested positive for 2+ E. coli.

55. On October 16, 2012, the fluid drained from Mr. Salzman's abdomen tested positive for E. coli.

56. On October 27, 2012, Gary L. Cohen, M.D., a neurologist, was consulted, and he noted that Mr. Salzman's presentation was consistent with a classic post-surgical delirium with some elements of septicemia, and recommended an MRI of the brain.

57. On October 28, 2012, an MRI of Mr. Salzman's brain was conducted, and Mani Lama, M.D., the interpreting radiologist, documented that Mr. Salzman exhibit bilateral mastoid effusions, and that he could not exclude mastioditis.

58. Mr. Salzman remained an inpatient at Parkview Medical Center until he was discharged on November 4, 2012.

## V.  FIRST CLAIM FOR RELIEF
### (Medical Negligence – Larry J. Butler, M.D.)

59. Plaintiff incorporates Paragraphs 1 through 58 herein by reference.

60. At all relevant times, Mr. Salzman was under the care and treatment of Defendant Butler.

61. With respect to the care and treatment of Gary Salzman, Defendant Butler owed a duty to exercise that degree of care, skill, caution, diligence, and foresight exercised by and expected of physicians in his specialty and under similar circumstances.

62. Defendant Butler deviated from the standard of care and was negligent in his care and treatment of Gary Salzman by:

9

      a.    Failing to reasonably and properly evaluate and examine Mr. Salzman;

      b.    Failing to reasonably and properly diagnose Mr. Salzman's condition;

      c.    Failing to reasonably and properly treat Mr. Salzman's condition;

      d.    Failing to recognize filling defects in Mr. Salzman's duodenum following the October 9, 2012, procedure;

      e.    Failing to recognize a leak of Mr. Salzman's right biliary system following the October 9, 2012, procedure;

      f.    Failing to treat a leak of Mr. Salzman's right biliary system following the October 9, 2012, procedure;

      g.    Failing to consult with or refer Mr. Salzman to appropriate medical specialists;

      h.    Failing to recognize Mr. Salzman's signs of infection on October 11, 2012; and

      i.    Discharging Mr. Salzman on October 11, 2012.

63. As a direct and proximate result of the negligent acts and omissions of Defendant Butler, Plaintiff, Gary Salzman, has suffered significant and permanent injuries and damages, including permanent physical and cognitive impairment and disfigurement, emotional stress, mental anguish and physical suffering. His injuries have been, and will continue to be, disabling and humiliating. The injuries he has suffered are permanent. Plaintiff has been forced to spend monies, and will continue to spend monies in the future, for medicine, doctors' fees, prescriptions, hospital care, x-rays, physical therapy, medical procedures, rehabilitation, educational care, long-term assistance, and related costs and expenses. Plaintiff has suffered a

loss of ability to enjoy a full, useful, and normal life. Plaintiff has suffered a loss of home and family care services, past and future, as a direct and proximate result of the negligence of Defendant Butler.

64. Plaintiff has suffered, and will continue to suffer, economic damages, mental dysfunction, physical impairment, physical disfigurement, emotional distress, mental anguish, and physical suffering. Plaintiff's injuries have been and will continue to be permanent, disabling, and humiliating. Plaintiff has suffered, and will continue to suffer, economic damages for the extraordinary medical, psychological, life care, educational, and essential service expenses associated with his injuries, as well as non-economic damages for emotional distress, anguish, inconvenience, and impairment of quality of life.

65. As a direct and proximate result of the negligence of Defendant Butler, Plaintiff will suffer future economic damages, has suffered past economic damages, will suffer future non-economic damages, has suffered past non-economic damages, will suffer future disfigurement and physical impairment damages, and has suffered past disfigurement and physical impairment damages. Plaintiff will make a claim for all costs and interest allowable under applicable law.

### VI. SECOND CLAIM FOR RELIEF
**(Medical Negligence – UCH-MHS d/b/a University of Colorado Health Memorial Hospital Central)**

66. Plaintiff incorporates Paragraphs 1 through 65 herein by reference.

67. At all relevant times, Mr. Salzman was under the care and treatment of Defendant, Memorial Hospital Central.

68. On or about October 6, 2012, Plaintiff placed himself under the care and treatment of Memorial Hospital Central for the care and treatment of his medical condition.

69. At all relevant times, Memorial Hospital Central had nursing personnel and nursing staff who wre officers, agents, shareholders, employees, or partners of Memorial Hospital Central, acting within the scope of their employment or within their authority as agents.

70. Memorial Hospital Central is responsible for the acts or omissions of its agents, employees, officers, directors, shareholders and/or partners including the nursing personnel and nursing staff including those caring for Plaintiff during his October 6, 2012, admission.

71. Memorial Hospital Central, acting by and through its agents, employees, officers and directors including, but not limited to, registered nurses, certified nursing assistants, nurse practitioners, licensed practical nurses, and other employees, all of whom were acting within the course and scope of their employment or within their authority as agents and employees of Memorial Hospital Central, were negligent in their care and treatment of Plaintiff, including but not limited to the following:

      a. Failing to provide proper and reasonable nursing care during Mr. Salzman's visit;

      b. Failing to properly and reasonably monitor, assess, chart and care for Mr. Salzman's condition;

      c. Failing to develop and follow reasonable policies and procedures for proper and reasonable nursing care, monitoring, assessing, charting, and caring for patients like Mr. Salzman;

       d.    Failing to timely and reasonably communicate with physicians and other medical personnel regarding Mr. Salzman's condition;

       e.    Failing to reasonably utilize the nursing chain of command in regards to Mr. Salzman's condition;

       f.    Failing to hire, retain, and supervise qualified nurses and other employees; and

       g.    Allowing Mr. Salzman to be discharge on October 11, 2012.

72. As a direct and proximate result of the negligent acts and omissions of Memorial Hospital Central, Plaintiff has suffered significant and permanent injuries and damages, including permanent physical and cognitive impairment and disfigurement, emotional stress, mental anguish and physical suffering. His injuries have been, and will continue to be, disabling and humiliating. The injuries he has suffered are permanent. Plaintiff has been forced to spend monies, and will continue to spend monies in the future, for medicine, doctors' fees, prescriptions, hospital care, x-rays, physical therapy, medical procedures, rehabilitation, educational care, long-term assistance, and related costs and expenses. Plaintiff has suffered a loss of ability to enjoy a full, useful, and normal life. Plaintiff has suffered a loss of home and family care services, past and future, as a direct and proximate result of the negligence of Memorial Hospital Central.

73. Plaintiff has suffered, and will continue to suffer, economic damages, mental dysfunction, physical impairment, physical disfigurement, emotional distress, mental anguish, and physical suffering. Plaintiff's injuries have been and will continue to be permanent, disabling, and humiliating. Plaintiff has suffered, and will continue to suffer, economic damages

for the extraordinary medical, psychological, life care, educational, and essential service expenses associated with his injuries, as well as non-economic damages for emotional distress, anguish, inconvenience, and impairment of quality of life.

72.     As a direct and proximate result of the negligence of Memorial Hospital Central, Plaintiff will suffer future economic damages, has suffered past economic damages, will suffer future non-economic damages, has suffered past non-economic damages, will suffer future disfigurement and physical impairment damages, and has suffered past disfigurement and physical impairment damages. Plaintiff will make a claim for all costs and interest allowable under applicable law.

WHEREFORE, Plaintiff respectfully prays for compensatory damages in his favor and against Defendants in an amount to be determined by the trier of fact, interest from the date of filing, pre-judgment and post-judgment interest as allowed by law, witness fees, filing fees, deposition expenses, attorneys fees, and for such other and further relief as the Court may deem appropriate and just, including all costs.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted this 7th day of October, 2014.

> *s/ Isobel S. Thomas*
> Isobel S. Thomas
> Matthew R. Laird
> BOGUE, PAOLI & THOMAS, LLC
> 1401 17TH Street, Suite 320
> Denver, Colorado 80202
> Telephone:   (303) 382-1990
> Facsimile:    (303) 382-1982
> ithomas@bogue-paoli.com
> mlaird@bogue-paoli.com

15

-and-

Ken Fiedler
BOESEN LAW, LLC
4100 East Mississippi Avenue, Suite 1900
Denver, Colorado 80246
Telephone:   (303) 999-9999
Facsimile:    (303) 320-1915
kfiedler@boesenlaw.com
*Attorneys for Plaintiff*

**Plaintiff's Address:**
3805 7th Street NE, #196
Great Falls, Montana 59404